1  TIMOTHY COURCHAINE
   United States Attorney
2  District of Arizona

3  GLENN B. McCORMICK
   Arizona State Bar No. 013328
4  Assistant U.S. Attorney
   Two Renaissance Square
5  40 N. Central Ave., Suite 1200
   Phoenix, Arizona  85004
6  Telephone:  602-514-7500
   Email: glenn.mccormick@usdoj.gov
7  Attorneys for Plaintiff

8              IN THE UNITED STATES DISTRICT COURT

9                  FOR THE DISTRICT OF ARIZONA

10

11  United States of America,

                    Plaintiff,                 **CR-24-00312-PHX-SPL**

12                                          **UNITED STATES' SENTENCING
                                                 MEMORANDUM**
13         v.

14  Michael David Hanson,

                    Defendant.
15

16         The defendant entered a plea agreement on 18, 2024, admitting to Count One of the

17  seventeen count indictment, Threats Against the President and Successors to the

18  Presidency, in violation of Title 18, United States Code, Section 871(a). The defendant

19  admitted to the following factual basis:

20         On December 22, 2023, I, Michael David Hanson, while using my cellular

21         telephone in the District to Arizona, accessed one of my X accounts,

22         @popyourcherry24, and knowingly posted "#joeAndKamala I'm asking you

23         to resign on Monday your alternative is death brutally murdered…" By

24         addressing my threat to "joeAndKamala," I was referring to President of the

25         United States Joseph Biden and Vice President of the United States Kamala

26         Harris. My words were intended to communicate their plain meaning, that is,

27         a threat asking via X that the President of the United States and Vice

28         President of the United States resign by Monday, or they would be brutally

1        murdered. I transmitted the threat with intent to communicate a threat of

2        violence.

3  The Presentence Investigation Report (PSR) recounts the evidence of the many other

4  threats charged in the indictment, which establish the defendant's pattern of threatening

5  comments on social media. The PSR also outlines the defendant's criminal history, much

6  of which appears to involve the same mental health issues evident in the present case.

7        The United States requests the Court to follow the Plea Agreement stipulations

8  pursuant to Fed. R. Crim. P. 11(c)(1)(C) and impose a sentence as follows:

9        1.     Stipulation: The sentence imposed shall not exceed the low end of the

10        sentencing range as calculated under U.S.S.G. § 1B1.1(a). This stipulated

11        sentencing cap will not change based on departures considered under U.S.S.G. §

12        1B1.1(b). Nothing in this agreement shall preclude defendant from moving for a

13        downward departure, variance, or sentence below the cap, or the court from

14        imposing a sentence below the cap.

15        2.     Stipulation: From the date of sentencing or completion of any term of

16        imprisonment imposed, whichever is later, as part of the sentence the defendant

17        shall be placed on Supervised Release for a period of three years.

18        3.     Stipulation: As a condition of Supervised Release, unless prior authorization

19        is received from the supervising United States Probation Officer, the defendant shall

20        not knowingly have any contact, direct or indirect, with any persons holding elected

21        office at the federal, State, or local level, or any member of any elected official's

22        staff.

23        4.     Stipulation: As a condition of Supervised Release, unless prior authorization

24        is received from the supervising United States Probation Officer, the defendant shall

25        not communicate with any staff at the University of New Mexico.

26        5.     Stipulation: As a condition of Supervised Release the defendant shall not

27        communicate with the victims referenced in Counts 13 through 17 of the

28

1    indictment—DC, LC, and their entire family—of whose identities the defendant is

2    aware of from the discovery provided by the United States in this case.

3        6.     Stipulation: As a condition of Supervised Release, the defendant shall close

4    all social media accounts and shall not open new accounts or view, post, or in any

5    way use social media without prior authorization of the United States Probation

6    Officer.

7        7.     Stipulation: The defendant shall not enter the properties and campuses of the

8    University of New Mexico without prior approval of the supervising Probation

9    Officer and the University of New Mexico Police Department.

10        8.     Stipulation: The defendant shall participate in an outpatient mental health

11    assessment and participate in outpatient mental health treatment as determined to be

12    necessary by a medical or mental health professional and follow any treatment

13    directions by the treatment provider. Further, the defendant must take medicine as

14    prescribed by a medical professional providing mental health treatment, unless

15    defendant objects, in which event defendant must immediately notify the probation

16    officer. Defendant must contribute to the cost of treatment in an amount to be

17    determined by the probation officer.

18    **Sentencing Factors:**

19    "The Court shall impose a sentence sufficient, but not greater than necessary, to

20    comply with the purposes set forth in [the seven factors below]." Title 18 U.S.C. § 3553(a).

21    **Title 18 U.S.C. § 3553(a) analysis:**

22    **1. Nature and Circumstances of the Offense and History and Characteristics**

23    **of the Defendant**

24        a.  Nature and Circumstances of the Offense

25    The defendant engaged in threatening conduct toward the President and Vice

26    President of the United States and others using social media accounts. The threats

27    expressed an intent to kill the named victims. Secret Service Special Agents spoke with the

28

1    defendant, warning him of the gravity of his actions, to which he initially claimed First

2    Amendment protections, and later indicated he did not know it was illegal, had no intent to

3    carry out his threats, and would not do it again.  Nonetheless, the defendant did make

4    additional threats using a different social media account. The defendant's threats were

5    graphic, unequivocal, and repetitive. The nature of the defendant's threats and

6    circumstances under which they were made must be taken seriously. Further, as outlined

7    in the Presentence Investigation Report (PSR), the defendant has been physically violent

8    in the past. Therefore, the nature and circumstances of the defendant's crimes warrant a

9    sentence that both punishes criminal behavior and addresses potential underlying causes of

10   that behavior.

11                    b.  History and Characteristics of the Defendant

12          The PSR outlines the defendant's troubling history and characteristics. Although the

13   defendant is well educated and appears to be an excellent student (graduated from the

14   University of New Mexico Magna Cum Laude), he concurrently suffers from mental health

15   issues. Potentially related to his mental health issues, the defendant also has substance

16   abuse problems.  The threatening conduct in the present case is verbal, not physical, but he

17   has a history of physical violence that is concerning. It may well be that the only thing

18   differentiating the defendant's prior physical acts of violence, and his current threats is the

19   opportunity to carry them out. The stipulations in the Plea Agreement are intended to

20   address the defendant's mental health and substance abuse issues, in addition to punishing

21   his criminal behavior.

22          **2.  The Need for Sentence Imposed to:**

23                  A.  Reflect Seriousness of the Offense

24          Threatening to brutally murder the President and Vice President of the United States

25   are very serious crimes. Unfortunately, such crimes are not rare.  A sentence that reflects

26   the seriousness of these crimes will necessarily include incarceration as both a general and

27   specific deterrence to such criminal acts. The time the defendant has and will spend

28

1    incarcerated for making threats should serve as a negative reminder to him of what happens

2    when he engages in such criminal acts. It should also serve as a warning to others who may

3    feel tempted to post criminally threatening comments online. Additionally, ongoing

4    supervision and treatment will monitor the defendant's transition back into society, serve

5    to continue to remind the defendant of the consequences for such acts, and provide the

6    defendant tools to avoid criminal acts in the future.

7                      B.  Afford Adequate Deterrence to Criminal Conduct

8         The PSR documents the defendant's embarrassment over his conduct. The

9    defendant has and continues to assert that he had no intent to carry out any of his threats.

10   If believed, in his current state of mind the defendant is already somewhat deterred. It may

11   be that treatment and counseling the defendant has taken advantage of while detained has

12   him thinking clearly. The sentence imposed must address the defendant's mental health

13   and substance abuse issues to continue any deterrent effect already achieved.

14                      C.  Protect the Public from Further Crimes of the Defendant

15        While incarceration practically limits the defendant's ability to engage in online

16   threating conduct, supervisory conditions prohibiting contact with victims, requiring

17   warranted treatment and medication, and monitoring through Supervised Release are part

18   of a long-term solution to the defendant's history of criminal activity. Therefore,

19   supervision with conditions that address the defendant's specific needs after incarceration

20   will best serve the public and the specific victims going forward.

21                      D.  Provide the Defendant with Needed –

22                          Educational or Vocational training

23        The defendant is well educated.  Further education in the usual sense may serve the

24   defendant, however any such requirement must be consistent with any treatment

25   determined to be necessary for the defendant 's success.

26                          Medical Care

27        The stipulated condition requiring a mental health assessment and compliance with

28

1    treatment recommended by a medical professional is designed to address the defendant's

2    specific medical needs while the defendant is on Supervised Release.

3                                Other Correctional Treatment

4          The United States is not aware of other correctional treatment that will help the

5    defendant successfully integrate back into the community.

6          **3.  Kinds of Sentence Available**

7          A violation of Title 18, United States Code, Section 871(a), Threats Against the

8    President and Successors to the Presidency, is punishable by a maximum fine of

9    $250,000.00, a maximum term of imprisonment of five years, or both, and a term of

10   supervised release of three years.  A term of incarceration followed by Supervised Release

11   will best serve the public and the defendant to address the conduct of conviction and

12   prevent relapses in the future.

13         4.  **Kinds of Sentence and Sentencing Range**

14         The stipulation of the parties limits any term of incarceration to no more than the

15   low end of the United States Sentencing Guidelines (USSG) range. The Draft PSR

16   calculates that range to be 33 to 41 months, making the effective incarceration cap 33

17   months. Taking the defendant's criminal history and mental health history, a term of

18   incarceration that does not exceed 33 months is sufficient but not greater than necessary to

19   address the defendant's criminal conduct.

20         **5.  Pertinent Policy Statements**

21         The Draft PSR at paragraphs 95 and 96 indicates that U.S.S.G.  Policy Statement

22   § 5H1.3 (Mental and Emotional Conditions) and Policy Statement § 5K2.21 (Dismissed

23   and Uncharged Conduct) "may be warranted" in this case. However, after the writing of

24   the Draft PSR, effective November 1, 2025, amendment 836 to the U.S.S.G. deleted these

25   potential departures.

26         **6.  Need to Avoid Sentencing Disparities**

27         The defendant presents with unique mitigating mental health factors. These factors

28

1    warrant a different result than someone who does not have similar mitigating factors.

2    **7.  Need to Provide Restitution**

3           The United States has not received requests for restitution from any of the

4    victims of the counts in the indictment.

5    <u>**Conclusion and Sentencing Recommendation:**</u>

6           The United States concurs with the USSG offense level calculation. The PSR

7    calculates the Total Offense Level to be 19 and Criminal History Category to be II.  The

8    resulting guideline range is 33 to 41 months. Stipulation 1 in the Plea Agreement caps the

9    sentencing range at the low end of the guidelines, making the effective sentencing range 0

10   to 33 months. The United States recommends a sentence that does not exceed 33 months.

11   The United States estimates that as of the currently scheduled sentencing date, the

12   defendant will have served approximately 747 days, or 24- and one-half months, for which

13   the defendant should receive credit towards the term of incarceration imposed.

14          As noted above, the Draft PSR dated October 4, 2024, considered departures that

15   have since been deleted from the U.S.S.G. (§§ 5H1.3 and 5K2.21). § 5H1.3 presented a

16   potential downward departure for Mental and Emotional Conditions. § 5K2.21 presented a

17   potential upward departure for Dismissed and Uncharged Conduct. The Draft PSR

18   ultimately did not recommend either departure, reasoning that the guideline calculation

19   adequately accounted for all the factors in those U.S.S.G. departures, rendering the

20   calculation an appropriate disposition in the case without them. Draft PSR p. 23. While the

21   basis for those now-deleted sections could be considered for a variance, the government

22   submits that the bases for each former departure offset each other and the calculation and

23   range in the Draft PSR is, indeed, appropriate for the disposition in this case.

24          The United States further requests the court to follow the stipulations in the Plea

25   Agreement and impose a three-year term of Supervised release, no contact provisions, not

26   enter properties of the University of New Mexico, close and not use social media accounts,

27

28

1    and require participation in mental health assessment and treatment as recommended by a

2    mental health professional.

3         A sentence of incarceration that does not exceed 33 months followed by three years

4    of Supervised Release that includes the Standard Conditions and specifically the Special

5    Conditions stipulated in the Plea Agreement is sufficient but not greater than necessary to

6    comply with the purposes of sentencing in Title 18 United States Code, Section 3553(a).

7         Respectfully submitted this 26th day of January, 2025.

8

9                                        TIMOTHY COURCHAINE
                                         United States Attorney
                                         District of Arizona
10

11                                        *s/ Glenn B. McCormick*
                                         GLENN B. McCORMICK
                                         Assistant U.S. Attorney
12

13

14

15

16

17                        **CERTIFICATE OF SERVICE**

18         I hereby certify that on the 26th day of January, 2025, I electronically transmitted

19    the attached document to the Clerk's Office using the CM/ECF System for filing and

20    transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

21

22    Debbie Jang
      Counsel for Michael David Hanson
23

24     *s/Glenn B. McCormick*
      U.S. Attorney's Office
25

26

27

28